**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| FREDDIE A. PARSONS, )<br> Petitioner, )<br> )<br>v. )<br> )<br>LUIS SPENCER, )<br> Respondent. )<br>_____ ) | CIVIL ACTION<br>NO. 05-11315-REK |

**RESPONDENT'S SUPPLEMENTAL APPENDIX TO MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS MIXED HABEAS CORPUS PETITION**

The respondent, Luis Spencer, hereby files the following documents as his supplemental

appendix in support of his motion to dismiss mixed habeas corpus petition:

1.    Docket Sheets, *Commonwealth v. Parsons*, Bristol Superior Court No. 2000-

0195; and

2.    Application for further appellate review, *Commonwealth v. Parsons*, FAR No.

14189, that the petitioner filed in the Supreme Judicial Court.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

Daniel I. Smulow, BBO # 641668
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2949

Dated: July 22, 2005

2

## **Certificate of Service**

I hereby certify that a true copy of the above document was served on Freddie A. Parsons, W-70538, M.C.I. - Norfolk, P.O. Box 43, Two Clark Street, Norfolk, MA 02056-0043, by first class mail, postage prepaid, on July 22, 2005.

Daniel I. Smulow

## Commonwealth of Massachusetts
## SUPERIOR COURT
## Case Summary
## Criminal Docket

# Commonwealth v Parsons, Freddie

Details for Docket: BRCR2000-00195

## Case Information

| Docket Number: | BRCR2000-00195 | Caption: | Commonwealth v Parson Freddie |
|---|---|---|---|
| Entry Date: | 06/15/2000 | Case Status: | Crim 2 Ctrm 2 -lower (Ne Bedford) |
| Status Date: | 02/08/2002 | Session: | Disposed (sentenced) |
| Lead Case: | NA | Deadline Status: | |
| Trial Deadline: | | Jury Trial: | NO |

## Parties Involved

4 Parties Involved in Docket: BRCR2000-00195

| Party Involved: | | Role: | Defendant |
|---|---|---|---|
| Last Name: | Parsons | First Name: | Freddie |
| Address: | | Address: | |
| City: | | State: | |
| Zip Code: | | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Other interested party |
|---|---|---|---|
| Last Name: | File Copy | First Name: | |
| Address: | | Address: | |
| City: | | State: | |
| Zip Code: | | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Plaintiff |
|---|---|---|---|
| Last Name: | Commonwealth | First Name: | |

S.A. 1

| | | | |
|---|---|---|---|
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Surety |
| **Last Name:** | Pitta | **First Name:** | Carol A |
| **Address:** | 27 Viall Street | **Address:** | |
| **City:** | New Bedford | **State:** | MA |
| **Zip Code:** | 02740 | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

4 Attorneys Involved for Docket: BRCR2000-00195

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MA130 |
| **Last Name:** | Brandt | **First Name:** | Eric S |
| **Address:** | 44 Bromfield Street | **Address:** | Appeals Unit |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02108 | **Zip Ext:** | |
| **Telephone:** | 617-482-6212 | **Tel Ext:** | |
| **Fascimile:** | 617-988-8484 | **Representing:** | Parsons, Freddie (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Tynan | **First Name:** | Colleen A |
| **Address:** | 460 County Street | **Address:** | |
| **City:** | New Bedford | **State:** | MA |
| **Zip Code:** | 02740 | **Zip Ext:** | |
| **Telephone:** | 508-997-9393 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Parsons, Freddie (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | KECH01 |
| **Last Name:** | Surprenant | **First Name:** | Daniel M |
| **Address:** | 122 Dean Street | **Address:** | |

S.A. 2

| | | | | | |
|---|---|---|---|---|---|
| **City:** | Taunton | | **State:** | MA | |
| **Zip Code:** | 02780 | | **Zip Ext:** | | |
| **Telephone:** | 508-822-2000 | | **Tel Ext:** | | |
| **Fascimile:** | 508-822-8022 | | **Representing:** | | |

| | | | | |
|---|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | MA130 | |
| **Last Name:** | Keehn | **First Name:** | Benjamin H | |
| **Address:** | 44 Bromfield Street | **Address:** | Suite 310-A | |
| **City:** | Boston | **State:** | MA | |
| **Zip Code:** | 02108 | **Zip Ext:** | | |
| **Telephone:** | 617-482-6212 | **Tel Ext:** | | |
| **Fascimile:** | 617-988-8495 | **Representing:** | Parsons, Freddie (Defendant) | |

## Calendar Events

18 Calendar Events for Docket: BRCR2000-00195

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 11/24/2000 | 08:30 | Hearing: Motion | 1 | Event not held--scheduled for anot date |
| 2 | 12/21/2000 | 08:30 | Hearing: Motion | 1 | Event not held--scheduled for anot date |
| 3 | 01/12/2001 | 08:30 | Hearing: Motion | 1 | Event not held--scheduled for anot date |
| 4 | 01/29/2001 | 08:30 | Hearing: Motion | 1 | Event held as scheduled |
| 5 | 02/20/2001 | 08:30 | Conference: Pre-Trial | 1 | Event not held--scheduled for anot date |
| 6 | 03/02/2001 | 08:30 | Conference: Pre-Trial | 1 | Event held as scheduled |
| 7 | 03/29/2001 | 08:30 | Conference: Lobby | 1 | Event held as scheduled |
| 8 | 04/19/2001 | 08:30 | Conference: Status Review | 1 | Event held as scheduled |
| 9 | 05/04/2001 | 08:30 | Conference: Status Review | 1 | Event not held--scheduled for anot date |
| 10 | 06/05/2001 | 08:30 | TRIAL: by jury | 1 | Event not held--scheduled for anot date |
| 11 | 07/30/2001 | 08:30 | TRIAL: by jury | 1 | Event not held--scheduled for anot date |
| 12 | 08/08/2001 | 08:30 | Hearing: Motion | 1 | Event not held--scheduled for anot date |
| 13 | 08/10/2001 | 08:30 | Hearing: Motion | 1 | Event held as scheduled |
| 14 | 10/18/2001 | 08:30 | TRIAL: by jury | 1 | Event not held--scheduled for anot |

S.A. 3

|    |            |       |                                 |   | date                          |
|----|------------|-------|---------------------------------|---|-------------------------------|
| 15 | 11/26/2001 | 08:30 | TRIAL: by jury                  | 1 | Event not held--joint request |
| 16 | 01/07/2002 | 08:30 | TRIAL: by jury                  | 2 | Trial begins                  |
| 17 | 01/08/2002 | 08:30 | TRIAL: by jury                  | 2 | Trial ends                    |
| 18 | 02/08/2002 | 09:00 | Hearing: Sentence Imposition    | 2 | Event held as scheduled       |

# Full Docket Entries

95 Docket Entries for Docket: BRCR2000-00195

| Entry Date: | Paper No: | Docket Entry: |
|-------------|-----------|---------------|
| 06/15/2000 |    | Original case info: ORIGIN=I. |
| 07/11/2000 |    | RE Offense 1:Plea of not guilty |
| 07/11/2000 |    | RE Offense 2:Plea of not guilty |
| 07/11/2000 |    | RE Offense 3:Plea of not guilty |
| 11/10/2000 |    | Stat at cnvrsn to cmputr 11/10/2000. |
| 11/10/2000 |    | (see docket book for previous docket entries). |
| 03/29/2001 |    | Deft.'s Motion (#7) for Discovery - By agreement of the parties and |
| 03/29/2001 |    | with the adopted modifications set forth herein, this Motion is |
| 03/29/2001 |    | ALLOWED. (McLaughlin, J.) |
| 07/30/2001 | 9  | Motion To Continue filed. |
| 08/10/2001 |    | Motion #9: Defendant's motion to continue trial, by agreement of the |
| 08/10/2001 |    | parties, this motion is ALLOWED, with a new trial date set for |
| 08/10/2001 |    | October 18, 2001 (Burnes, J.) PFL |
| 01/07/2002 | 10 | Motion by Deft: Motion for Examination of Jurors in Addition to |
| 01/07/2002 | 10 | Statutory Questions and Questions Pursuant to Commonwealth vs. |
| 01/07/2002 | 10 | Flebotte |
| 01/07/2002 |    | Motion (P#10) Allowed in part; Denied in part. (John A. Tierney) MAF |
| 01/07/2002 | 11 | Motion by Deft: Motion to Conduct a Voir Dire of All "Fresh |
| 01/07/2002 | 11 | Complaint" Witnesses |
| 01/07/2002 |    | Motion #11: Withdrawn by Counsel |
| 01/07/2002 | 12 | Motion by Deft: Motion in Limine |
| 01/07/2002 |    | Motion #12: Ruling on the Record. (Tierney, J.) MAF |
| 01/07/2002 | 13 | Commonwealth's list of potential witnesses |
| 01/07/2002 | 14 | Defendant's list of witnesses |
| 01/08/2002 | 15 | Motion by Deft: for a required finding of not guilty |
| 01/08/2002 |    | Motion (P#15) denied (John A. Tierney, Justice). |
| 01/08/2002 | 16 | Defendant's request for Jury Instructions |
| 01/08/2002 | 17 | List of exhibits |

S.A. 4

| 01/08/2002 | 18 | Verdict of guilty - Rape of Child -Use of Force, as to Offense A |
|---|---|---|
| 01/08/2002 | 19 | Verdict of guilty, as to Offense B |
| 01/08/2002 | 20 | Verdict of guilty, as to Offense C |
| 01/08/2002 | | RE Offense 1:Guilty verdict |
| 01/08/2002 | | RE Offense 2:Guilty verdict |
| 01/08/2002 | | RE Offense 3:Guilty verdict |
| 01/08/2002 | | Bail set on July 11, 2000 revoked; Defendant ordered HELD WITHOUT BAIL |
| 01/08/2002 | 21 | Bail: mittimus issued |
| 01/11/2002 | | Bail in the amount of $5,000.00 returned to Surety Carol A. Pitta |
| 01/11/2002 | | Check #4146 |
| 02/08/2002 | 22 | Commonwealth files memorandum in support of sentencing recommendation |
| 02/08/2002 | | Defendant sentenced to Massachusetts State Prison for the term of not |
| 02/08/2002 | | more than seven (7) years and one (1) day nor less than seven (7) |
| 02/08/2002 | | years, as to Offense 1; Defendant advised of his right to appeal to |
| 02/08/2002 | | the Appellate Division of the Superior Court for a review of said |
| 02/08/2002 | | sentence; Defendant advised of his right to appeal the judgment and |
| 02/08/2002 | | sentence of the Court within thirty (30) days thereof under MRCP Rule |
| 02/08/2002 | | 4b; T.C. -33- days (John A. Tierney, Justice) |
| 02/08/2002 | 23 | Mittimus for safe keeping issued to Cedar Junction MCI (Walpole) |
| 02/08/2002 | | Defendant sentenced to Probation for the term of twenty (20) years, |
| 02/08/2002 | | as to Offense 2; to commence from and after release from |
| 02/08/2002 | | incarceration this day imposed on Offense 1; Defendant ordered to |
| 02/08/2002 | | have special terms and conditions of Probation (John A. Tierney, |
| 02/08/2002 | | Justice) |
| 02/08/2002 | | Offense 3, placed on file per order of the Court. (John A. Tierney, |
| 02/08/2002 | | Justice) |
| 02/08/2002 | | Victim-witness fee assessed: $60.00 |
| 02/08/2002 | | Assessment of $50.00 per month re: Probation Supervision Fee |
| 02/08/2002 | | Defendant warned per Chapter 22E Sec. 3 of DNA |
| 02/08/2002 | | Notice of duty to register as a sex offender. |
| 02/15/2002 | 24 | Notice of appeal from sentence to Cedar Junction MCI (Walpole) filed |
| 02/15/2002 | 24 | by Freddie Parsons |
| 02/19/2002 | 25 | Letter transmited to the Appellate Division. All parties notified |
| 02/19/2002 | 25 | February 19, 2002 |
| 02/19/2002 | 26 | Motion to Withdraw and for appointment of counsel |
| 02/19/2002 | 27 | NOTICE of APPEAL FILED by Freddie Parsons |
| 02/20/2002 | | Motion (#26) ALLOWED (Tierney, J.) |
| 02/26/2002 | 28 | Motion by Deft: to Waive Victim/Witness Assessment Fee |
| 02/28/2002 | 29 | Court Reporter Silvia, Marilyn is hereby notified to prepare one copy |
| 02/28/2002 | 29 | of the trial transcripts of the evidence of January 07 and 08 2002. |
| 02/28/2002 | 30 | Court Reporter Saulnier, Lori E. is hereby notified to prepare one |

S.A. 5

| | | |
|---|---|---|
| 02/28/2002 | 30 | copy of the transcript of the sentencing of February 08, 2002. |
| 03/06/2002 | | Motion (P#28) denied (Charles Hely, Justice). Copies mailed. |
| 03/07/2002 | 31 | Defendant files motion to revise and revoke sentence (no hearing |
| 03/07/2002 | 31 | requested at this time) |
| 03/12/2002 | 32 | Transcript of sentencing testimony received of February 8, 2002, |
| 03/12/2002 | 32 | volumes #1, from court reporter, Saulnier, Lori E. |
| 03/22/2002 | 33 | Appearance of Deft's Atty: Benjamin H Keehn |
| 04/16/2002 | | Victim-witness fee paid as assessed |
| 10/17/2002 | 34 | Transcript of trial testimony from January 7, 2002 received volumes # |
| 10/17/2002 | 34 | 1 from court reporter, Silvia, Marilyn |
| 10/17/2002 | 35 | Transcript of trial testimony from January 8, 2002 received volumes # |
| 10/17/2002 | 35 | 2 from court reporter, Silvia, Marilyn |
| 12/02/2002 | 36 | Certificate of delivery of transcript by clerk filed. |
| 12/20/2002 | 37 | Statement of the case on Appeal |
| 12/20/2002 | 38 | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 12/20/2002 | | Notice of completion of assembly of record sent to clerk of Appeals |
| 12/20/2002 | | Court and attorneys for the Commonwealth and defendant. |
| 12/24/2002 | 39 | Appearance of Deft's Atty: Eric S Brandt |
| 01/07/2003 | 40 | Notice of Entry of appeal received from the Appeals Court on December |
| 01/07/2003 | 40 | 23, 2002 No. 2002-P-1688 |
| 08/22/2003 | 41 | Notice of Docket Entry received from the Appellate Division of the |
| 08/22/2003 | 41 | Superior Court: May 21, 2003 defendant withdrew petition for review |
| 08/22/2003 | 41 | of sentence (Robert DelloRusso, Assistant Clerk/Magistrate) |
| 07/26/2004 | 42 | Rescript received from Appeals Court; judgment AFFIRMED |
| 09/24/2004 | 43 | Defendant files motion to revise and revoke sentence (does not |
| 09/24/2004 | 43 | request a hearing at this time) |

## Charges

3 Charges for Docket: BRCR2000-00195

| No. | Charge Description: | Indictment: | Status: |
|---|---|---|---|
| 1 | Rape by force, child under 16 | | Guilty verdict |
| 2 | Assault, intent to rape child under 16 | | Guilty verdict |
| 3 | Indecent assault & battery on child under 14 | | Guilty verdict |

© Copyright, Massachusetts Administrative Office of the Trial Court, 2000 - 2001.

S.A. 6

FAR 14189

# CLERK'S COPY



COMMONWEALTH OF MASSACHUSETTS

BRISTOL COUNTY

SUPREME JUDICIAL COURT
NO.

APPEALS COURT
NO. 02-P-1688

COMMONWEALTH

V.

FREDDIE PARSONS

### DEFENDANT'S APPLICATION FOR
### FURTHER APPELLATE REVIEW

Now comes the defendant, pursuant to Mass. R.A.P. 27.1, and requests that he be granted leave to obtain further appellate review of his convictions on Bristol County indictments no. 2000-195(1-3).

The grounds for this application are stated in the accompanying memorandum.

Respectfully submitted,

FREDDIE PARSONS

By his attorney,

Eric Brandt
COMMITTEE FOR PUBLIC COUNSEL SERVICES
Public Defender Division
44 Bromfield Street
Boston, Massachusetts 02108
(617) 482-6212
BBO #054130

Dated: June 10, 2004.

COMMONWEALTH OF MASSACHUSETTS

BRISTOL COUNTY                          SUPREME JUDICIAL COURT
                                        NO.

                                        APPEALS COURT
                                        NO. 02-P-1688

COMMONWEALTH

V.

FREDDIE PARSONS

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## APPLICATION FOR FURTHER APPELLATE REVIEW

### STATEMENT OF PRIOR PROCEEDINGS

On June 15, 2000, the defendant, Freddie Parsons,
was charged in three indictments with the following
offenses: forcible rape of a child, G.L. c.265, §22A;
indecent assault and battery on a child, G.L. c.265,
§13B; and assault with intent to rape a child, G.L.
c.265, §24B (R. 6-8).[1/] The defendant pleaded not
guilty (R. 1).

On January 7 and 8, 2002, the indictments were
tried to a jury in the Bristol Division of the Superior
Court Department (Tierney, J., presiding). The jury
returned verdicts of guilty (R. 3-4).

_____

[1/]The record appendix is cited as "(R.   )." The tran-
script of the trial is cited by volume and page as
"(Tr.  /  )." The Appeals Court's memorandum of
decision is cited as "(Memo.   )."

-2-

On February 8, 2002, the defendant was sentenced on the rape charge to a term of seven years to seven years and a day at Massachusetts Correctional Institution, Cedar Junction (R. 4). On the indecent assault and battery charge, he was sentenced to twenty years probation (R. 4). The charge of assault with intent to rape was placed on file (R. 4). The defendant's notice of appeal was filed on February 19, 2002 (R. 11).

The case was subsequently briefed in the Appeals Court and oral argument was heard on January 8, 2004. On May 28, 2004, the Court affirmed the convictions in an unpublished memorandum issued pursuant to Rule 1:28.

The defendant has not filed a petition for rehearing in the Appeals Court.

## STATEMENT OF FACTS

This case arises out of allegations that the defendant sexually abused the complainant over a period of two years. The sole issue at trial was whether the alleged abuse actually occurred or whether it was fabricated by the complainant.

### A. The Commonwealth's Case

The Commonwealth's case consisted of testimony from the complainant and two other witnesses who gave

-3-

evidence of fresh complaint.   The principal testimony
before the jury is summarized below.

At the time of trial, the complainant was fourteen
years old and in the ninth grade (Tr. I/118, 122).   At
the time in question, she was ten to twelve years old
and in the fifth to seventh grades (Tr. I/122, 134,
143).   During that time, she lived in an apartment in
New Bedford with her mother, her three siblings, and
the defendant, who was her mother's boyfriend (Tr.
I/118-120; II/4).

### 1.   The Alleged Incidents

According to the complainant, the first incident
of abuse occurred when she was in the fifth grade, on a
day when the defendant drove her to dance class (Tr.
I/123, 143-144).   At several points in her testimony,
the complainant claimed that on that day, the defendant
touched her breast and touched her vagina under her
tights (Tr. I/124-125, 145-146).   At other points in
her testimony, however, she acknowledged that she had
no memory of any touching by the defendant on that day:

Q.   [By the Prosecutor] Can you tell us
what happened on that day that you
went to dance class with the tights?

A.   No.

(Tr. I/124)

-4-

Q. Do you remember being touched where you shouldn't be touched on that day going to dance class?

A. No.

(Tr. I/125)

Q. Did you tell me, when I first asked, that you didn't have a memory of what happened to you on the day you were wearing tights?

A. Yes.

Q. Do you now have a memory of that?

A. No.

(Tr. I/188)

Q. Do you know, right now, as I'm speaking to you, exactly what happened with the tights?

A. No.

(Tr. I/189)

Q. [By Defense Counsel] So, you have no memory of what happened in the car on the day with the tights?

A. No.

(Tr. I/193)

According to the complainant, another incident occurred in the sixth or seventh grade (Tr. I/126, 170-171), when the defendant drove her to an airport and parked the car (Tr. I/126-127). At one point in her testimony, she claimed that while in the car, the defendant put his fingers in her vagina, tried to put his penis near her mouth, which she "refused" (Tr.

SA0011

-5-

I/128-129), and ejaculated on her (Tr. I/127, 172).
The complainant also claimed that this occurred at the
airport on two occasions that she could remember (Tr.
I/129-130, 171). At other points in her testimony,
however, she acknowledged that she did not recall the
defendant doing anything "with his hands" on "any"
occasion at the airport (Tr. I/130, 172-173).

According to the complainant, there were other
incidents that occurred at home in the apartment,
where the defendant would come to her room at night and
wake her up (Tr. I/131). During those incidents, she
claimed, the defendant also put his fingers in her vagina,
or put his penis near her mouth, which she "refused," and
ejaculated on her stomach or back (Tr. I/131-132).

When asked how often "something like this"
occurred during the period when she was ten to twelve
years old, the complainant first answered that she
could not say, and then claimed that it occurred every
week or every other week (Tr. I/134-135, 182). When
asked when the last time was that "something like this"
occurred, she first answered that she did not recall,
and then claimed that it occurred in January of seventh
grade (Tr. I/132, 134).

As to her difficulty in recalling what she called
"the details" (Tr. I/125, 130), the complainant agreed

-6-

that she did not remember everything (Tr. I/165, 186-187) and, on cross-examination, acknowledged that she did not remember "a lot of things" (Tr. I/178).

2. The Fresh Complaint Evidence

The Commonwealth presented evidence of fresh complaint from Stephanie Conigo, a friend and classmate of the complainant's (Tr. I/133; II/46). According to the complainant and Conigo, they had two conversations about the matter (Tr. I/136; II/48), which occurred two or three weeks apart (Tr. I/161, 164-165; II/49, 56). Conigo testified that in the first conversation, the complainant said that the defendant was "touching" her and wanted her to "do things that she didn't want to do" (Tr. II/48). Conigo testified that they were "really good friends" (Tr. II/46-47), and that she believed the complainant for that reason (Tr. II/58).

The second conversation occurred at Conigo's house on February 19, 2000 (Tr. I/137, 155; II/44-45), late in the afternoon, when the complainant became very upset because she did not want to go home (Tr. I/138-139; II/51). Following that conversation, Conigo telephoned the complainant's mother at work and spoke to her briefly (Tr. I/138-139; II/17, 39, 50-52, 58-59). The complainant testified that she then got on the phone and told her mother that the defendant had

SA0013

-7-

been "touching" her (Tr. I/139). The Commonwealth's
remaining witness, the complainant's mother, also·
testified that the complainant made this complaint to
her at that time (Tr. II/23, 44).

### 3.   The Defendant's Statements

The complainant's mother, Kimberly Rock, testified
that following the complainant's phone call, she went
home to the apartment and spoke to the defendant (Tr.
II/25-26). On direct examination, Rock testified that
the conversation went as follows. When she told the
defendant of the complainant's claim that he had been
touching her, the defendant asked, "What do you mean?"
(Tr. II/25-26). When she asked him directly if he had
touched her daughter's "twat", he replied, "What are
you talking about? I didn't do that" (Tr. II/26).
When she persisted in asking if he had touched her
daughter, he said, according to her, "Maybe I hugged
her, and kissed her, and maybe I touched her a little
bit below, but just because I love her" (Tr. II/26).
Rock then told the defendant to leave, following which
he said, "I'm sorry. I just love her. I didn't do
anything wrong" (Tr. II/26-27).

On cross-examination, however, Rock initially
denied that the defendant's first response was to
ask, "What do you mean?" (Tr. II/33). She then

-8-

admitted telling the police that this was, in fact, his
first response, and that he next asked, "What, hugging
her?" (Tr. II/33-34). Also on cross-examination, Rock
twice asserted that the defendant did not deny com-
mitting the touching claimed: "He never said no" (Tr.
II/34), "He never denied it" (Tr. II/41). She ulti-
mately admitted, however, that "[m]aybe" she told a
nurse at the hospital that the defendant did deny the
claim (Tr. II/41), as the nurse later testified (Tr.
II/71).[2/]

B.  The Defendant's Evidence

    The defense presented additional evidence on
cross-examination of Commonwealth witnesses and through
a witness called by defense counsel. That evidence
included the following.

    1.  The Complainant's Motive to Lie

    The complainant testified that her natural father,
whom she loved, left the house when she was eight years

---

[2/]Based on this testimony, defense counsel, in closing
argument, also challenged the credibility of Rock's
testimony that the defendant admitted the touching
claimed: "[H]e denied it. She didn't want to give you
that. She wanted to shade it in a way that you would
think that maybe he did it.... I shouldn't have to
stand up there and pull it out of her. He denied it
the second she confronted him. And she didn't want to
admit that. Ultimately she did, but that's important"
(Tr. II/93).

-9-

old, and that she subsequently missed her father (Tr.
I/147-148). She acknowledged that when the defendant
moved into the house, "I really didn't like him"
because "[h]e tried to act like my father" (Tr. I/120-
121, 146, 152). She also acknowledged that throughout
their subsequent relationship, "I really never liked
him" (Tr. I/121). She agreed that she "resented" the
defendant's attempts to set rules for her and enforce
discipline in the house (Tr. I/147, 148), as her
mother also testified ("She would get resentful.
She would say that he's not her father") (Tr. II/8-9,
35). The complainant explained: "He was telling me
like what I can do and what I couldn't do, and I didn't
like that. Until this day, I still don't like it if
any man came into my house and told me what to do"
(Tr. I/147).

The complainant testified that she complained to
her mother about the defendant's rules, but that her
mother tended to defer to the defendant, which she also
resented (Tr. I/149-150). Her mother confirmed that she
complained about the defendant's rules "[l]ots of times,
almost every time" he enforced them (Tr. II/9), and
agreed that she sometimes did so "right in front of him"
(Tr. II/36). Rock testified that the complainant had "no

-10-

problem speaking her mind" to her mother (Tr. II/35).[1/]

One of the defendant's rules was that he ordi-
narily did not allow the children to do sleepovers (Tr.
I/149-150). On February 19, 2000, the complainant
wanted to do a sleepover with Conigo, as the complain-
ant and her mother both acknowledged (Tr. I/137-138,
158-159; II/38). Although her mother would have per-
mitted the sleepover (Tr. II/38), the defendant refused
to allow it (Tr. I/138; II/38) and was emphatic in his
refusal (Tr. I/176). The complainant's mother agreed
that the complainant was "openly upset" by the defen-
dant's refusal (Tr. II/38), and the complainant herself
acknowledged that she was "mad" about the refusal (Tr.
I/176). It was later that day that the complainant
first complained to her mother that the defendant had

---

[1/]Based on this testimony, defense counsel, in closing
argument, challenged the credibility of the complain-
ant's claim that she was "scared" to tell her mother
about the alleged abuse (Tr. I/132, 137): "[She] was
not a shrinking violet. This is not a girl who
couldn't [speak] when something bothered her.... And
that's important when you think [about her claim] that
she couldn't say anything because she was afraid" (Tr.
II/88). "[She was] openly critical [of the defendant],
even at some points, with him right there.... Does
anybody really believe that [she] ... is going to let
him do this to her one time without complaining about
it?" (Tr. II/94-95). In making this argument, defense
counsel also noted additional testimony (Tr. II/89),
given by both Rock and the complainant, that Rock had
talked with the complainant about sexual abuse and had
assured her that if she were ever abused, she could
come tell her mother and would be believed (Tr. I/132,
173-174; II/42-43).

-11-

sexually abused her (Tr. I/138-139).[4]

### 2.    The Complainant's Subsequent Statements

Also on February 19, 2000, following her complaint
to her mother, the complainant was taken to a hospital
(Tr. I/141), where she was interviewed by an emergency
room nurse, Laurie Frazer (Tr. II/67-69). Frazer was
called by the defense and testified as follows.

The complainant told Frazer that in a conversation
with a friend that night, her friend revealed that she
had been molested, and the complainant then told her
friend that she had also been molested (Tr. II/69-71,
80). Specifically, the complainant said that the con-
versation and her complaint to her friend both occurred
that night (Tr. II/79, 81). Based on the complainant's
statements, it was Frazer's impression that the com-
plaint made that night was the complainant's "first"
complaint to her friend (Tr. II/80) -- i.e., that "it
all came to light that night" (Tr. II/80).[5]

_____

[4]In closing argument, defense counsel suggested that it
was the complainant's anger over this episode that
actually triggered her complaint to her mother that day
(Tr. II/89-90).

[5]Based on this testimony, defense counsel argued in
closing that the complainant had not, in fact, made any
complaint to Conigo several weeks earlier, as they
claimed (see ante, at 6): "[T]here [is] a possibility
that these two girls, being good friends, got together
after the fact, and decided to put the time back" (Tr.
II/92).

-12-

In her own testimony, the complainant denied
telling Frazer, or the police, that her first complaint
to Conigo occurred in the conversation that night (Tr.
I/164-165). The nurse testified, however, that she
documented the complainant's statements in written
notes (Tr. II/69, 73), and that she also had an "inde-
pendent memory" of the complainant saying that the
conversation and the complaint to her friend both
occurred that night (Tr. II/79, 81).

## C.   The Defense Theory

The defense theory of this case was that the
complainant's claims of abuse were fabricated. In her
opening statement, defense counsel suggested that the
complainant was not "telling the truth" (Tr. I/109-
110), that "[no]thing really happened" (Tr. I/116), and
that the defendant had been accused of "a crime that
[he] didn't commit" (Tr. I/110, 115).

In her closing argument, defense counsel reiterated
that "nothing was happening" (Tr. II/87), and stressed
that the "only evidence" of the claimed abuse came from
the complainant herself (Tr. I/85-86, 90, 91). In both
her opening and her closing, defense counsel suggested
that the key issue to be determined was the "credibility"
of the complainant's claims (Tr. I/112) -- "[Y]our job is
to figure out what you can credit and rely on" (Tr. II/90).

-13-

### D. The Defendant's Motion to Exclude Suspicion Evidence

Prior to trial, the defendant filed a motion in limine seeking to exclude various evidence, including the following:

> 4. Any evidence that Kimberly Rock, [the complainant's] mother, <u>suspected or speculated</u> that Freddie Parsons may have been molesting her daughter. Kimberly Rock told police she suspected something might be going on when she saw the complaining witness seated on the defendant's lap a few weeks before the report to police. Her observation of [the complainant] on the defendant's lap may be admissible, but her <u>conjecture and speculation</u> that something was going on should not be admissible as the prejudice to the defendant outweighs the probative value.

(R. 9-10) (emphasis added)

As to this evidence, the hearing on the motion consisted only of the following:

> THE COURT: Any evidence that the mother suspected or speculated, obviously, should not be admissible.
>
> [THE PROSECUTOR]: I agree.

(Tr. I/92-93)

Thereafter, however, the excluded matter was implicated by the prosecutor during his direct exami-

-14-

nation of the complainant's mother.[6]   It was also
raised expressly by the prosecutor's redirect exami-
nation of the mother, following her testimony, on
cross-examination, that she had had conversations with
the complainant about sexual abuse (Tr. II/42-43; see
also Tr. I/132, 173-174).   The prosecutor's examination
on redirect is the subject of argument A., post.

### ISSUE PRESENTED

Whether the judgments must be reversed because of
prejudicial errors committed by the prosecutor in
examination of the complainant's mother and in closing
argument to the jury.

---

[6]Q.   Did you ever see her sitting on his lap?

[DEFENSE COUNSEL]:   Judge, I object.

THE COURT:   You know better than that, Mr.
[Prosecutor].

[THE PROSECUTOR]:   I'll withdraw it, your
Honor.

THE COURT:   You bet your life you will.
Don't do it again.

(Tr. II/16)

-15-

## ARGUMENT

I.

**THE JUDGMENTS MUST BE REVERSED DUE TO PREJUDICIAL
ERRORS COMMITTED BY THE PROSECUTOR IN EXAMINATION AND
CLOSING ARGUMENT.**

The trial of this case was unfairly skewed in the
Commonwealth's favor by improper suspicion evidence and
an improper appeal to the jury's sympathies.  The two
errors are discussed below.

> A.    The prosecutor improperly elicited
> evidence that the complainant's mother
> had suspected that the defendant was
> sexually abusing the complainant.

On redirect of the complainant's mother, the
prosecutor elicited testimony stating the mother's
suspicion of the defendant due to an incident,
described earlier in her testimony (Tr. II/14-15), in
which the defendant had driven the complainant to the
store.  The testimony on redirect appears as follows:

> Q.    Why did you have those conversations
> with [the complainant about sexual
> abuse]?
>
> A.    After the incident with them going to
> the store, I felt uncomfortable about
> how long they took, and I figured --
> something told me -- I don't know if
> it was a mother's instinct --
>
> [DEFENSE COUNSEL]:  Judge, I object.
>
> THE COURT:  Yes, sustained.

-16-

> You may say that you felt uncomfort-
> able when it took so long to go to
> the store, but that's it.

(Tr. II/43)

The examination was improper and the resulting evidence
was prejudicial.

A witness' suspicion that the defendant has com-
mitted a crime amounts to the witness' mere opinion,
which is ordinarily "irrelevant in a criminal trial."
Commonwealth v. Lennon, 399 Mass. 443, 445 (1987), and
cases cited. For that reason, suspicion testimony very
similar to that elicited here has been held "errone-
ously admitted" and has required reversal. Common-
wealth v. Martin, 417 Mass. 187, 189-191 (1994)
(involving testimony that witness had "instinct or
suspicion that the defendant had 'something [sexually]
to do' with the complainant") (alteration original).
See Commonwealth v. Duff, 245 Mass. 81, 85 (1923)
(involving testimony that defendant's wife "suspected"
that defendant had "improper relations" with complain-
ant). In this case, moreover, the testimony was pre-
sented in violation of the judge's prior ruling that
suspicion evidence "obviously" was not admissible (Tr.
I/92-93), see Commonwealth v. Brown, 376 Mass. 156, 166
(1978); Commonwealth v. Roderick, 429 Mass. 271, 274

-17-

(1999) ("the prosecutor should not ask a question that will inevitably lead to [excluded] evidence"), and in violation of the prosecutor's own agreement not to present it (Tr. I/93). See Commonwealth v. Felton, 16 Mass. App. Ct. 63, 66 (1983) ("The Commonwealth must keep its promises"), quoted in Commonwealth v. Lavin, 42 Mass. App. Ct. 711, 713 (1997).

The Appeals Court stressed that, on defense counsel's objection, the judge excluded the most explicit portion of the suspicion testimony (Memo. at 2) -- i.e., that "something told me," maybe "a mother's instinct," that the defendant might be sexually abusing the complainant (Tr. II/43). But the judge also left in place the mother's remaining testimony that she "felt uncomfortable" about the matter (Tr. I/43), which amounted to exactly the same thing -- i.e., that she "felt uncomfortable" that the defendant might be sexually abusing the complainant. On defense counsel's objection, then, the judge should have excluded all of the improper suspicion testimony, including the mother's testimony that she "felt uncomfortable" about the matter.

The testimony was inadmissible and the judge's response was inadequate.

-18-

B.  The prosecutor improperly argued
    in closing that the jurors should
    place themselves in the complainant's
    position in giving her testimony on
    the stand.

In her closing argument, defense counsel properly
stressed the numerous inconsistencies in the com-
plainant's testimony, particularly as to her memory,
or lack of memory, of the incidents alleged ("She
changed her testimony right on the stand on certain
points") (Tr. II/91-92).  In his closing, the prose-
cutor responded by asking the jurors to place them-
selves in the complainant's position, as follows:

>      Inconsistencies, there are some incon-
> sistencies in this case, absolutely....
>
>      But think about the opportunities for the
> honest person to have inconsistencies, and by
> analogy, use your own common life experi-
> ences.  You're all sitting here at this trial
> today.  What if I asked you in a month, or
> two weeks, three weeks, a month from now, to
> sit down with a police officer and tell him
> what happened at this trial?  Then two police
> officers that you have never met.  A couple
> of days later, three, a third.
>
>      Say, for instance, that the trial had
> lasted for two and a half years.  Then you
> spoke with the DSS worker about the trial,
> and then you spoke with a number of members
> of the district attorney's office about the
> trial.  Each time, more time goes by, and
> they are taking notes, and they are writing
> reports on it.  Do you think there might be
> some inconsistencies there, even if you were
> just trying to tell what happened?

-19-

> Say it wasn't a trial, but it was <u>one of
> the deepest, darkest secrets that you had,
> one of the most emotionally traumatic things
> that has ever happened to you, and you cry
> throughout the first three or four inter-
> views.</u>  Think that would make it difficult?
> Could there possibly be inconsistencies, even
> when you're honestly trying to tell what
> happened?  Of course, ladies and gentlemen.
>
> (Tr. II/104-105) (emphasis added)

At the conclusion of the prosecutor's closing,

defense counsel approached the bench and objected to

this argument as follows: "He asked the jurors to put

themselves in a situation where they might be inter-

viewed about some other matter.  I think that's totally

inappropriate" (Tr. II/112).  The judge, however,

responded only, "Okay.  Objection is noted" (Tr. II/112),

and gave no curative instructions.  The argument was

improper.

It is now well established that a prosecutor may

not urge the jurors to "place yourselves in th[e]

position" of the alleged victim.  <u>Commonwealth</u> v.

<u>Sevieri</u>, 21 Mass. App. Ct. 745, 753-755 (1986).  See

e.g., <u>Commonwealth</u> v. <u>Valentin</u>, 420 Mass. 263, 274

(1995); <u>Commonwealth</u> v. <u>Fletcher</u>, 435 Mass. 558, 568

n.6 (2002); <u>Commonwealth</u> v. <u>Vaughn</u>, 23 Mass. App. Ct.

40, 43 n.3 (1986).  The rule also applies to the parti-

cular variant of the argument made in the present case.

-20-

See <u>Commonwealth</u> v. <u>Esteves</u>, 46 Mass. App. Ct. 339,
342-343 (1999) ("The prosecutor improperly ... asked
the jury to put themselves in the victim's place as
[she] testified on the witness stand"); <u>Commonwealth</u> v.
<u>Jordan</u>, 49 Mass. App. Ct. 802, 816 (2000) (prosecutor
asked jury to "put yourselves ... into the shoes of
[the victim] who is in a public courtroom testi-
fying....").  "The invitation to the jury to put
themselves in the position of the victim is usually.
improper." <u>Id</u>.

Here, it was likewise improper for the prosecutor
to invite the jurors to imagine testifying, as the
complainant did, about conversations with numerous
different officials (Tr. II/104-105) -- particularly,
conversations about "one of the most emotionally
traumatic things that has ever happened to you, [where]
you cry throughout the first three or four interviews"
(Tr. II/105).  Furthermore, defense counsel's objection
specifically identified the impropriety in the argument
(Tr. II/112), but the judge gave no curative instruc-
tion directed "specifically" at that argument.  <u>Common-</u>
<u>wealth</u> v. <u>Santiago</u>, 425 Mass. 491, 501 (1997).  See,
e.g., <u>Commonwealth</u> v. <u>Hawley</u>, 380 Mass. 70, 85 (1980)

-21-

(noting that improper argument "was not pointed to or
called improper").

The Appeals Court concluded that the argument was
"improper" (Memo. at 4), and that conclusion was
correct.

### C. The prosecutor's errors were prejudicial and require reversal of the defendant's convictions.

The only disputed issue in this case was whether
the claimed sexual abuse actually occurred or not.

On that issue, the Commonwealth's only claimed
witness to the abuse was the complainant, whose testi-
mony was directly challenged as false (see <u>ante</u>, at
12), and her testimony concerning the claimed incidents
was not only vague, but self-contradictory on matters
of significance -- whether she did or did not recall
the first claimed incident at all, and whether she did
or did not recall a key portion of the second claimed
incident (see <u>ante</u>, at 3-5). In addition, the com-
plainant's credibility was further undercut by affirma-
tive evidence of a motive to lie -- her own testimony
acknowledging that she "never like[d]" the defendant,
that she had long "resented" his rules constraining her
behavior, and, indeed, that she was "mad" at the defen-
dant for enforcing one of those rules on the very day

-22-

that she first complained to her mother of the claimed
abuse (see _ante_, at 9-11).

The remainder of the Commonwealth's case consisted
mainly of evidence of fresh complaint, which in effect,
merely repeated the complainant's claims.  See _Common-
wealth_ v. _Licata_, 412 Mass. 654, 657, 660 (1992)
(stressing that fresh complaint is not substantive
evidence that complaint is true).  The Commonwealth
presented no medical, physical or scientific evidence
corroborating the complainant's claims, a factor that
is significant in evaluating the strength of the
Commonwealth's case.  See, e.g., _Commonwealth_ v.
_Worcester_, 44 Mass. App. Ct. 258, 267 (1998) ("There
was no physical evidence ... [so] all depended on whom
the jury believed").  And while the Commonwealth did
present testimony from the complainant's mother
alleging an admission by the defendant, that testimony
was also challenged as false, and that challenge was
also based on self-contradictory testimony -- in the
mother's case, as to whether the defendant actually
denied committing the claimed abuse (see _ante_, at 7-8 &
n.2).  See _Commonwealth_ v. _Ford_, 397 Mass. 298, 301-302
(1986) (rejecting conclusion that defendant's alleged

-23-

confession was dispositive, where testimony alleging
confession was itself "disputed")..

        In short, this is a case where "[t]he strength of
the Commonwealth's evidence turned on the credibility
of [its witnesses]," Commonwealth v. Kelleher, 395
Mass. 821, 827 (1985), and the credibility of those
witnesses was an issue solely "for the jury." Common-
wealth v. Ford, supra, at 302. The Commonwealth's
evidence against the defendant therefore cannot be
viewed as "overwhelming." Commonwealth v. Perez, 411
Mass. 249, 260 (1991).

        In these circumstances, the errors committed by
the prosecutor were highly prejudicial to the defense.
First, there was the improper evidence that the com-
plainant's mother suspected -- or, as it was left with
the jury, "felt uncomfortable" -- that the defendant
might be sexually abusing the complainant (Tr. II/43).
The complainant's mother was the defendant's girlfriend
(Tr. I/119), who had lived with him for five years (Tr.
II/4), and presumably knew him well. Particularly for
that reason, the very fact that she suspected the
defendant of committing such abuse, and, indeed, had
harbored that suspicion even before the complainant
ever complained of such abuse, added substantial weight

-24-

to the credibility of the complainant's claims. See Commonwealth v. Martin, supra, 417 Mass. at 189-191 (involving similar improper testimony, also from defendant's girlfriend, concerning her suspicion that defendant had sex with complainant).

Second, the prosecutor's improper argument urged the jurors to place themselves in the complainant's position in recounting "one of the deepest, darkest secrets that you had, one of the most emotionally traumatic things that has ever happened to you" (Tr. II/105). This dramatic, and personalized, appeal easily could have diverted the jury's focus from the issue in dispute -- whether, in fact, the claimed traumatic events ever happened at all -- to sympathy for the complainant's plight. Since the argument thus unfairly bolstered the credibility of the complainant's claims, a reviewing court "cannot be certain that the jury's conclusion was not clouded by the improper appeal." Commonwealth v. Santiago, supra, 425 Mass. at 501-502.

-25-

CONCLUSION

For the reasons stated herein, the prosecutor's improper examination and argument both constituted prejudicial error, and violated the defendant's right to a fair trial under the Fourteenth Amendment to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights. Therefore, the judgments should have been reversed by the Appeals Court, and this Court should grant the defendant's application for further appellate review.

Also, the defendant continues to press his argument that the convictions of indecent assault and battery and assault with intent to rape are duplicative of the rape conviction (see D.B., Argument II), which has not been addressed herein due to limitations of space. If further review is granted, the defendant requests that the Court consider that argument as well.

Respectfully submitted,

FREDDIE PARSONS

By his attorney,

Eric Brandt
COMMITTEE FOR PUBLIC COUNSEL SERVICES
Public Defender Division
44 Bromfield Street
Boston, Massachusetts 02108
(617) 482-6212
BBO #054130

Dated:   June 10, 2004.